## SCHULTZE *v.* MONTGOMERY COUNTY PLANNING BOARD ET AL.

[No. 43, September Term, 1962.]

*Decided November 19, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT, MARBURY and SYBERT, JJ.

*James C. Christopher,* for appellant.

*B. Houston McCeney,* for appellees.

SYBERT, J., delivered the opinion of the Court.

This appeal questions the validity of a decree of the Circuit
Court for Montgomery County dismissing an equity bill for
an injunction filed by the appellant, George H. Schultze, against
the appellee, the Montgomery County Planning Board.

Appellant is the owner of lot 26 in Block 9 of Section 2 in
the Bradley Hills subdivision in Montgomery County. Desir-
ing to resubdivide his lot, in May 1960 he submitted a pre-
liminary plan to the Montgomery County Planning Board in
accordance with the Montgomery County Code (1955), Chap.
106, Subdivision Regulations, § 106-2, which required every
proposed subdivision or resubdivision to be submitted to the
planning board for preliminary approval. The preliminary plan
proposed to resubdivide the lot into two lots, each having a
frontage on the street of 82.58 feet and each containing an area
of 11,840 square feet and a width at the front building line in
excess of 75 feet. The lot in question is located in an R-90

zone, in which, under the Zoning Ordinance, the minimum lot area is 9,000 square feet and the minimum width at the front building line is 75 feet. Although the proposed resubdivision would not reduce appellant's lots below these minimum zoning standards, the planning board disapproved the preliminary plan on the ground that the proposed lots would not be of "substantially the same character as to suitability for residential use, area, street frontage and alignment, and restrictions as other land within the existing subdivision and similarly situated lots in the locality", as required by Sec. 106-8 (b) of the subdivision regulations of the 1955 Montgomery County Code, which was then in effect, but which became Sec. 101-9 (b) of the 1960 County Code.[1]

Following the disapproval, appellant requested a reconsideration of his plan and a hearing, giving as reasons that the board had permitted similar resubdivisions within the subdivision and even within the same block, and that therefore the board's action was arbitrary and capricious. When the board refused to reconsider its decision, appellant filed a bill of complaint in the Circuit Court praying injunctive relief against the disapproval of his plan on the grounds that Sec. 106-8 (b) was unconstitutional, or if it were found constitutional, that the action of the board was arbitrary and capricious. Counsel for appellant and counsel for the board agreed to submit the matter to the court on an agreed statement of facts. While this statement was being prepared it was discovered that an error had been made in the information furnished the board upon its original consideration, *i.e.,* the board's staff had failed to report to the board the previous resubdivision of a number of lots within the very block in question. Upon discovery of the error, and while the suit was still pending, the board authorized a resubmission of the plan. This was done and the plan was approved by the board.

Thereupon, appellant proceeded to prepare and submit a final plan of the lot as resubdivided, identical with the preliminary plan. When the final plan was presented for approval, several

---

1. No question under the zoning regulations is involved in this case.

nearby property owners requested a hearing before the planning board, which held a hearing and again reversed its position and disapproved the final plan. The parties stipulated in the injunction suit that the disapproval was for the same reasons and on the same basis upon which the board had originally disapproved the preliminary plan. The court allowed a number of the protesting property owners to intervene in the case as defendants.

Counsel for appellant and for the board entered into an agreed statement of facts. After recital of the matters above outlined, and others, it was agreed that the court would be requested first to determine whether the action of the board was arbitrary and capricious and to reserve a decision on the validity of Sec. 106-8 (b) of the subdivision regulations pending the outcome of the first issue. At the beginning of the hearing, the court agreed to do so. Some time after the hearing the court filed an opinion and decree holding that the board's disapproval of the final plan was not arbitrary and capricious. It also, apparently inadvertently, dismissed the plaintiff's bill of complaint in spite of the fact that the plaintiff's reserved issue—the validity of Sec. 106-8 (b)—remained undetermined.

In this appeal from the decree the appellant contends, *inter alia,* that the action of the planning board in disapproving his final plan after having approved an identical preliminary plan, without the development of any new facts in the interim, constituted a mere change of mind and was therefore arbitrary and capricious conduct.

In disapproving the final plan, although the resulting two lots would have been within the requirements specified by the Zoning Ordinance, the planning board held that the proposed resubdivision would not conform to the standards established by Sec. 106-8 (b) of the Subdivision Regulations (1955 County Code). As has been noted, this was the same reason advanced by the board for disapproval of the preliminary plan, later amended to approval upon the supplying of additional facts theretofore unknown to the board. Sec. 106-8 (b) read:

> "Lots covered by a resubdivision plat shall be of
> substantially the same character as to suitability for

residential use, area, street frontage and alignment, and restrictions *as other land within the existing subdivision and similarly located lots in the locality."* (Emphasis supplied.)

Inherent in a determination of this nature by the board is an examination of the character of the lots to be resubdivided as compared with other land in the subdivision and similarly situated lots in the locality, and a decision as to whether the resubdivision plan meets the standards required by the ordinance. In so doing, the board is, of course, determining facts, and accordingly is exercising a quasi-judicial function. Many cases since *Dal Maso v. County Comm'rs,* 182 Md. 200, 34 A. 2d 464 (1943), have made it clear that notwithstanding anything therein said, administrative bodies or officers may exercise such power. See, for example, *Hecht v. Crook,* 184 Md. 271, 277, 40 A. 2d 673 (1945); *Heaps v. Cobb,* 185 Md. 372, 378, 45 A. 2d 73 (1945); and *Heath v. M. & C.C. of Baltimore,* 187 Md. 296, 49 A. 2d 799 (1946).

In the recent case of *Kay Const. Co. v. County Council,* 227 Md. 479, 177 A. 2d 694 (1962), in deciding that "good cause" had not been shown as required by the Zoning Ordinance of Montgomery County for reconsideration of a zoning application by the County Council, acting in a legislative capacity as a District Council, this Court took occasion to consider the revisionary powers of a zoning board acting in a quasi-judicial capacity, even in the absence of a statutory requirement for showing good cause for reconsideration. We reviewed and cited with approval the case of *Board of Zoning Appeals v. McKinney,* 174 Md. 551, 199 Atl. 540, 117 A.L.R. 207 (1938), in which it was said (at 564 of 174 Md.) :

"It may be conceded without discussion that the Board has the right to correct errors in its decisions caused by fraud, surprise, mistake or inadvertence, which any agency exercising judicial functions must have, to adequately perform its duties. *Whether it has the right to reconsider its decision in a case which it has heard and decided, reopen the case and try it again, where there is no fraud, mistake, surprise, or*

*inadvertence, is another question. \* \* \* "* (Emphasis supplied.)

In that case, this Court interpreted the Baltimore City Zoning Ordinance, which contained no express provision for "good cause shown" as a condition for reconsideration, as implicitly requiring such a showing. In *Kay,* we pointed out that the rationale of *McKinney* has been applied by other courts and generally approved by the text writers, and we cited several authorities which, for the sake of brevity, we shall not repeat here. With regard to the limitations on a zoning board in reopening a case, see also *Md. Clothing Mfng. v. Baltimore,* 207 Md. 165, 113 A. 2d 743 (1955), citing *McKinney* with approval; 1 Yokley, *Zoning Law and Practice* (2nd ed.), Sec. 181; Bassett, *Zoning* (1940 ed.), p. 119.

In *McKinney,* a showing of fraud, surprise, mistake or inadvertence was established as the test to be applied in determining whether a zoning board, acting as a quasi-judicial body, has properly reopened and reversed its own decision. Since the planning board in the instant case was acting in a quasi-judicial capacity, and the planning regulations contained no provision concerning reconsideration of decisions, we think the test promulgated in *McKinney,* and recognized in *Md. Clothing Mfng. v. Baltimore, supra,* is the applicable one to determine the validity of reconsiderations by the board.

Applying the *McKinney* test to the facts of the case before us, it seems rather clear that while the reversal from the original disapproval to approval of the preliminary plan was based on the existence of mistake or inadvertence, *i.e.,* ignorance of information later supplied by an assistant engineer that there had been resubdivisions in the same block in which is located the property under consideration, the disapproval of the final plan amounted to a mere change of mind on the part of the board as it is apparent from the record that it was not founded upon fraud, surprise, mistake or inadvertence, or indeed upon any new or different factual situation. Although reason and authority lead to the conclusion that when such facts are present, an administrative body acting in a quasi-judicial capacity has the right to correct errors in its decisions, even

in the absence of provisions for reconsideration, the power of such a board is not one which may be exercised arbitrarily, but only where there is justification and good cause. In their absence here, we hold that the action of the board in disapproving the final plan was an abuse of its power and void. For examples of zoning cases holding that a mere change of mind is insufficient to justify a reversal of previous action, see *Mettee v. County Comm.*, 212 Md. 357, 365, 129 A. 2d 136 (1957) ; *White v. Board of Appeals,* 219 Md. 136, 148 A. 2d 420 (1959) ; and *Kay Const. Co. v. County Council, supra* (at 489 of 227 Md.). Cf. *Whittle v. Bd. of Zoning Appeals,* 211 Md. 36, 125 A. 2d 41 (1956).

In view of our holding, we do not reach the question as to the sufficiency of the evidence to support the resolution finally disapproving the plan. That resolution was a nullity and therefore the approval of the plan will stand. Nor do we find it necessary to determine the other issues raised in the appellant's brief concerning alleged errors of the trial court, including its failure to hold a hearing on the question of the validity of the planning regulation involved here. Since the trial court did not consider this point, and we are not passing on it, the appellant would not be precluded from questioning the validity of the planning regulation in any future litigation.

> *Decree reversed and case remanded for the entry of a decree in conformity with this opinion; costs to be paid by appellees.*