William H. REPLOGLE, Petitioner,

v.

STATE CIVIL SERVICE COMMISSION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1994.
Decided Jan. 27, 1995.
Publication Ordered April 13, 1995.

Arthur Cohen, for petitioner.

Earl R. Dryer, for respondent.

Before COLINS, President Judge, and NEWMAN, J., and SILVESTRI, Senior Judge.

COLINS, President Judge.

William H. Replogle (Replogle) brings this petition for review from the February 16, 1994 Order of the State Civil Service Commission (Commission), affirming the Commission's December 22, 1993 Order imposing a thirty (30)-day suspension upon Replogle for violating Sections 905.2(b)(7) and 905.2(b)(10) of the Civil Service Act, Act of August 5,

1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–741.1005 (Act).[1]

Replogle, employed as a civil engineer manager with the Department of Transportation (DOT), was also a political candidate for school board director for the Spring Cove School Board during the May 1991 primary and November 1991 general elections.[2] The findings of fact in the Commission's adjudication indicate that Replogle, along with four other school board director candidates, belonged to a group known as the Concerned Citizens for Child Safety and Learning (CCCSL).

On April 30, 1991, Replogle was the sole member of the CCCSL to attend a candidates' forum for the Spring Cove School Board election. While investigating the activities of another DOT employee who participated in this election, the Commission, by a letter to Replogle dated September 3, 1992, alleged that he had actively campaigned and participated in the election activities of the other four CCCSL candidates, in violation of the Act.

The Commission, on August 19, 1993, conducted an investigatory hearing with regard to Replogle's prohibited election activities, at which time Replogle argued that the Commission's September 3, 1992 letter was misleading in charging him with having supported a candidate in a "write-in campaign," rather than with "campaigning" in the broader sense of the word. Replogle contends that had he known about the latter, he would

have prepared rebuttal testimony. Nevertheless, the record indicates that Replogle twice rejected the Commission's proposal to continue the hearing to allow him an opportunity to present defense witnesses. Ultimately, the witnesses presented by the Commission were found credible in establishing that Replogle's actions violated Section 905.2(b) of the Act. Accordingly, pursuant to Section 905.2(f) of the Act,[3] the Commission, by an adjudication dated December 22, 1993, suspended Replogle from his employment with DOT for thirty days.

Replogle filed a petition for reconsideration. The Commission, however, by its order dated February 16, 1994, denied Replogle the relief he sought and reaffirmed its December 22, 1993 decision. This appeal followed.

■ The decision to grant or deny a request for reconsideration is a matter of administrative discretion and as such will only be reversed for an abuse of discretion. *Muehleisen v. State Civil Service Commission,* 66 Pa.Commonwealth Ct. 95, 443 A.2d 867 (1982), *affirmed,* 501 Pa. 335, 461 A.2d 615 (1983).

Replogle argues that the notice letter he received from the Commission was not sufficiently specific to apprise him of the exact prohibited political activity with which he was charged, and that the evidence presented failed to specify exactly what campaign mate-

---

1. Section 905.2(b)(7), 71 P.S. § 741.905b(b)(7), and Section 905.2(b)(10), 71 P.S. § 741.905b(b)(10), added by the Act of June 26, 1989, P.L. 47, provide, in pertinent part, as follows:

 (b) [n]o person in the classified service shall take an active part in political management or in a political campaign. Activities prohibited by this subsection include, but are not limited to, the following activities:
 . . . .
 (7) [s]oliciting votes in support of or in opposition to a candidate for public office in a partisan election or a candidate for political party office.
 . . . .
 (10) [e]ndorsing or opposing a candidate for public office in a partisan election or a candidate for political party office in a

 political advertisement, a broadcast, campaign, literature or similar material.

2. Section 905.2(d) of the Act, 71 P.S. § 741.905b(d), does not prohibit Replogle himself from being a candidate for the position of school director, *although he is not permitted to campaign on behalf of other candidates for this office.*

3. Section 905.2(f) of the Act, 71 P.S. § 741.905b(f), provides, in pertinent part, as follows:

 (f) A person in the classified service who violates this section shall be removed from employment . . . Provided, that the commission at its discretion may impose a penalty of suspension without pay for at least thirty days, but not more than one hundred twenty days, if it finds that the violation does not warrant termination.

rials on behalf of which candidates he was charged with distributing. Further, Replogle contends that because neither the statute nor Commission bulletins prohibit his running for the school board director's position, his First Amendment rights protect his right to campaign.

■ The Act's prohibitions on political activity are clear and reflect the "state's interest in shielding its civil servants from potential insidious pressures." *Ettinger v. State Civil Service Commission,* 114 Pa. Cmwlth. 594, 596, 539 A.2d 67, 68 (1988). Although pursuant to the Act, Replogle himself is permitted to run for the position of school board director, by participating in the campaign activities of other candidates, he unequivocally violated the Act. The Commission found that Replogle, by distributing at the polls, cards listing the names of the other four candidates who were members of CCCSL, in addition to his own name, contravened the Act's prohibitions. Substantial evidence of record, as indicated by the following testimony of Gerald W. Greene and Theresa Phillips at the August 19, 1993 hearing, supports the Commission's determination.

[Direct Examination of Gerald W. Greene]

Q. Were you present at the April 30, 1991 candidates' forum held with regard to this school board election?

A. Yes, I was.

Q. Was Mr. Replogle one of the candidates present?

A. Yes, he was.

. . . .

Q. Did all the candidates come to that?

A. No, they didn't.

Q. Was Mr. Replogle one of the candidates present?

A. Yes, he was.

Q. On that night, did Mr. Replogle only speak to his own candidacy?

A. As I recall, in Mr. Replogle's opening remarks, he announced his candidacy, and said he was running as a member of a five-member team, and that their platform was to stop foolish spending and to improve community relations.

Q. Did you vote on the May 21, 1991 primary election?

A. Yes, I did. When I went to my polling place, I was approached by Mr. Replogle, and he handed me a small business card that had red and blue printing on it, if I remember correctly. It had all five candidates names on it and had Citizens for Quality Ed, and some little things like common sense stuff. . . . All five candidates names were on it.

Q. And you received this card while you were on the way to your polling place?

A. As I was entering the poll, yes.

[Direct (Rebuttal) Examination of Gerald W. Greene]

Q. We heard testimony here today by several people who indicated who was handing the cards out at that poll. So the fact that you had a card in your hand doesn't mean that only Mr. Replogle had those cards to hand-out. . . . So, therefore, somebody else may have gave [sic] you [a] card which you would have had in your hand?

A. I would say, no, because I remember who handed me the card.

[Direct Examination of Theresa Phillips]

Q. Were you present at the candidates' forum held Tuesday, April 30, 1991?

A. Yes, I was.

Q. Was Mr. Replogle one of the candidates present?

A. Yes, he was.

. . . .

Q. On that night, did Mr. Replogle only speak to his own candidacy?

A. No, sir, he did not.

Q. If you recall, what did Mr. Replogle speak to?

A. In his opening introduction, he said that he was running for school board director.... He said that they [the other four candidates] were at a campaign strategy meeting. They could not attend, and that he was there in their place.

 We further agree with the Commission's conclusion that the written notice sent to Replogle was sufficient to commence an investigative hearing, and that since Replogle rejected the Commission's two offers to continue the hearing to allow him additional preparation time, he cannot now raise a notice issue. Finally, Replogle's attempt to present a First Amendment constitutional argument in defense of his conduct is not viable and, as in *Ettinger*, "we likewise perceive no constitutional infirmity" in upholding herein the Act's restrictions on the political activities of civil service employees, as reflective of public policy against undue influence. *Id.* at 596, 539 A.2d at 68.

 In consideration of the foregoing discussion and the fact that the 30–day suspension imposed on Replogle is not so unreasonable or onerous as to constitute an abuse of discretion, the order of the Commission is affirmed.

### *ORDER*

AND NOW, this 27th day of January, 1995, the February 16, 1994 order of the State Civil Service Commission in the above-captioned matter is affirmed.